UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
                                      )
HECTOR RIVERA,                        )
                   Plaintiff,         )
                                      )    CIVIL ACTION
         v.                           )    NO. 10-10544-WGY
                                      )
MICHAEL J. ASTRUE,                    )
Commissioner, Social Security         )
Administration,                       )
                   Defendant.         )
                                      )
```

MEMORANDUM AND ORDER

YOUNG, D.J.                                    September 29, 2011

## I.    INTRODUCTION

The plaintiff, Hector Rivera ("Rivera"), brings this action
pursuant to section 205(g) of the Social Security Act, 42 U.S.C.
§ 405(g), seeking judicial review of the final decision of the
Commissioner of Social Security ("the Commissioner") denying his
application for Social Security Disability Insurance Benefits
("SSDI benefits") and Supplemental Security Income ("SSI").  He
argues that the Commissioner's decision was not based on
substantial evidence because, in assessing the relevant medical
opinions, the hearing officer erred in giving significant weight
to the opinions of the state-agency psychologists while affording
limited weight to the opinion of Rivera's own treating clinician.
Rivera further claims that the hearing officer failed to abide by

the proper standard for pain evaluation and credibility, as set forth in Avery v. Secretary of Health & Human Servs., 797 F.2d 19 (1st Cir. 1986). Rivera requests that this Court reverse the decision of the Commissioner.

**A.   Procedural Posture**

Rivera applied for SSDI benefits on October 16, 2008, and then applied for SSI on October 20, 2008. Admin. R. 95-105. The Social Security Administration ("the Administration") denied both applications on January 6, 2009. Admin. R. 51-61. Upon Rivera's request for reconsideration, both applications were again denied on April 23, 2009. Id. at 68-71. Rivera then requested a hearing, id. at 74-76, which took place on August 13, 2009, id. at 87. The hearing officer issued a decision denying Rivera's applications for SSDI and SSI benefits on September 2, 2009. Id. at 7-14. The Administration's Decision Review Board selected Rivera's case for review, but failed to complete its review during the allotted time. Id. at 1-3. As a result, the hearing officer's decision became the final decision of the Commissioner. Id.

Rivera filed this action on April 1, 2010, appealing the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). Compl., ECF No. 1. On January 26, 2011, he filed a motion for an order reversing the decision of the Commissioner. ECF No. 12. The Commissioner then filed a motion for an order

affirming his decision.  ECF No. 15.  The Court here addresses
these two motions.

**B.   Factual Background**

Rivera was born on September 27, 1975.  Admin. R. 19.  He
has a ninth-grade education and has completed a GED.  Id. at 19,
202.  His past work experience includes being employed as a
maintenance worker from 1999 to 2005, as a commercial driver from
2006 to 2007, as a mechanic from 2007 to 2008, and as a
maintenance worker once again in 2008.  Id. at 113, 140.  Rivera
was last employed in October 2008, when he performed maintenance
work for the Brockton Housing Authority.  Id. at 27.

**1.   Depression**

Rivera began experiencing feelings of depression as early as
2003.  Id. at 29.  Rivera was admitted to Beth Israel Deaconess
Medical Center on June 30, 2003, after experiencing an episode of
unresponsiveness while at work.  Id. at 201.  Rivera was
diagnosed with Major Depressive Disorder with Psychotic Features
and Conversion Disorder.  Id. at 204.  He was prescribed
Risperdal and Zoloft.  Id.

Rivera believes that his depression prevents him from
working.  This belief stems from an incident that occurred on
October 6, 2008, during a home visit from his counselor and
therapist, Kristi Brown ("Brown"), of South Bay Mental Health
Center ("South Bay").  Id. at 397.  Rivera had begun mental

3

health counseling at South Bay in September 2008. Id. at 323. During the October 6, 2008, visit, Rivera expressed feelings of depression and suicidal thoughts. Id. at 27-28. Brown, concerned for the safety and well-being of her client, called 911 and Rivera was transported by ambulance to the emergency room at Brockton Hospital. Id. at 397. After examination, Rivera was diagnosed with depression and suicidal ideation. Id. at 258, 265. Rivera was transferred to Westwood Lodge for observation, where he remained for two days. Id. at 261-65, 298. At Westwood Lodge, Rivera was diagnosed with Mood Disorder Not Otherwise Specified ("NOS"). Id. at 300. Upon discharge, he was given a Global Assessment of Functioning ("GAF") score of 70, compared to the GAF score of 20 which he was assigned upon admission.[1] Id. at 301.

At a follow-up appointment at Brockton Neighborhood Health Center on October 14, 2008, Rivera was given a GAF score of 50. Id. at 307. Rivera was prescribed Wellbutrin by his primary care physician, Dr. Azmat Maskati ("Dr. Maskati"), in addition to the previously prescribed medications. Id. at 306.

---

[1] The GAF is a numeric scale (0 to 100) used by mental health practitioners to assess the social, occupational, and psychological functioning of a patient. A higher value represents superior functioning in a wide range of activities, while a lower value indicates significant impairments in functioning or other serious symptoms, such as suicidal ideation. See American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") 34 (4th ed., text rev. 2000).

In December 2008, in response to a request for information from the Administration regarding Rivera's application for SSDI benefits, Brown completed a report listing Rivera's diagnosis as Mood Disorder NOS and assigning him a GAF score of 47. _Id._ at 323. In her report, Brown further explained that Rivera's depression symptoms "prevent[ed] him from socializing" but stated that he was capable of focusing on small tasks. _Id._

In March 2009, Rivera again visited Brockton Neighborhood Health Center for his depression, where he was re-prescribed the drug Zoloft, which he had previously been taking, but had discontinued due to a negative effect on his libido. _Id._ at 471-72.

In April 2009, Brown filled out a "Supplemental Questionnaire as to Residual Functional Capacity" given to her by the Administration, evaluating the degree of Rivera's impairments caused by his depression. _Id._ at 170-73. Brown listed Rivera's diagnosis as Depressive Disorder NOS, severe agitation, and poor stress and anger management. _Id._ at 172. She listed Rivera's symptoms as irritability, depressed mood, lack of motivation, minimal focus, trouble sleeping, and social dysfunction. _Id._ Brown rated these symptoms as "severe" and categorized Rivera's emotional impairment as one that significantly limited his ability to engage in substantial, gainful activity in a competitive setting on a full-time, ongoing basis; she stated

that this impairment could be expected to last for twelve months or longer.  Id. at 171-72.

### 2.    Kidney Stones[2]

Rivera was diagnosed with having kidney stones in September 2004, during which time his depression and conversion disorder were both in remission.  Id. at 220-21. He was advised by a urologist at Beth Israel Deaconess Medical Center to monitor and reduce his sodium intake and was given a prescription for Moduretic.  Id. at 228-29.

## II.  LEGAL STANDARD

### A.    Standard of Review

Under 42 U.S.C. § 405(g), a district court has the power to affirm, modify, or reverse a decision of the Commissioner.  The district court must make its decision based on the pleadings and transcript of the record before the Commissioner: "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g); see Manso-Pizarro v. Secretary of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996).  The First Circuit

_____

[2] The hearing officer found that Rivera's kidney stones do not constitute a severe medically determinable impairment. Admin. R. 10.  This determination was based on testimony and record evidence that this condition was successfully treated in 2004 and that Rivera had not experienced problems related to the kidney stones within the past four to five years.  Id. at 13. Consequently, this medically determinable, yet not severe, impairment constituted only a minimal functional limitation.  Id.

has clarified this standard as requiring a court to uphold the Commissioner's findings if "a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." Irlanda Ortiz v. Secretary of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (quoting Rodriguez v. Secretary of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)). As it is the role of the Commissioner to draw factual inferences, make credibility determinations, and resolve conflicts in the evidence, the Court must not perform such tasks in reviewing the record. Id. Complainants face a difficult battle in challenging the Commissioner's determination because, under the substantial evidence standard, the Court must uphold the Commissioner's determination, "even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Rodriguez Pagan v. Secretary of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987).

B.    Social Security Disability Standard

An individual is considered disabled if she is "[unable] to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security Administration has promulgated a

7

five-step sequential analysis to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520. The hearing officer must determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or medically equals an impairment listed under 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) whether the claimant has the residual functional capacity to perform his past relevant work; and (5) whether the impairment prevents the claimant from doing any other work given the claimant's age, education, and work experience. Id.

The claimant bears the burden in the first four steps to show that he is disabled within the meaning of the Act. Goodermote v. Secretary of Health & Human Servs., 690 F.2d 5, 7 (1st Cir. 1982). Once the claimant has established that he is unable to return to his former employment, the burden shifts to the Commissioner to prove the fifth step, that the claimant is able to engage in substantial gainful activity that exists in significant numbers in the national economy. Id.

**III. THE HEARING OFFICER'S DECISION**

The hearing officer applied the five-step analysis described above. At the first step, he concluded that Rivera had not engaged in substantial gainful activity since October 6, 2008. Admin. R. 9. At the second step, the hearing officer found that Rivera suffered from two medically determinable impairments:

depression and a history of kidney stones.  Id.  Although

medically determinable, the hearing officer concluded that

Rivera's impairments were not severe because they did not, nor

were they expected to, significantly limit his ability to perform

basic work-related activities for twelve consecutive months.  Id.

Because Rivera's impairments were not determined to be severe,

the hearing officer concluded that Rivera was not disabled;

therefore, he did not continue with steps three and four of the

analysis.[3]  The hearing officer concluded that Rivera has not been

under a disability since October 6, 2008.  Id. at 13.

## IV.  ANALYSIS

Rivera challenges the hearing officer's decision that he

does not suffer from a severe mental impairment, arguing that the

decision is not supported by substantial evidence.  Pl.'s Mem.

Supp. Mot. Reverse Decision Comm'r ("Rivera's Mem.") 6, ECF No.

13.  Rivera also contends that the hearing officer failed to

follow the proper standard for pain evaluation and credibility.

Consequently, the hearing officer erred in finding Rivera's

testimony not credible as to the degree of limitation imposed by

his impairment and wrongfully afforded that testimony limited

weight.  Id.; see Admin. R. 11.

---

[3] See Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001)
(noting that "all five steps are not applied to every applicant,
as determination may be concluded at any step along the
process.").

## A. Severe Mental Impairment

Rivera disputes the hearing officer's finding that he does not suffer from a severe mental impairment. Specifically, he argues that the hearing officer erred in giving substantial weight to the assessments of the state agency psychologists in making his determination, while failing to give the same consideration to the opinion of Rivera's treating clinician, Brown. <u>See</u> Rivera's Mem. 6-9.

In finding that Rivera's depression did not constitute a severe mental impairment, the hearing officer followed the guidelines set forth in 20 C.F.R. § 404.1520a. The hearing officer first assessed Rivera's symptoms to determine whether he suffered from a medically determinable mental impairment. After finding that Rivera did suffer from a medically determinable mental impairment, the hearing officer went on to evaluate the degree of the functional impairment. <u>Id.</u> § 404.1520a(c). The hearing officer evaluated four broad functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. <u>Id.</u> § 404.1520a(c)(3). Impairments in the first three functional areas are evaluated according to the following five-point scale: none; mild; moderate; marked; or extreme. <u>Id.</u> § 404.1520a(c)(4). The fourth functional area is evaluated according to the following four-point scale: none; one or two; three; or four or more. <u>Id.</u> In

the functional area of activities of daily living, the hearing
officer found that Rivera had a mild limitation.  Admin. R. 12.
In making this determination, the hearing officer considered
Rivera's participation in activities such as playing with his
children, going for walks, riding a bicycle, cleaning and
performing other household chores, and using a computer.  Id.

In the area of social functioning, the hearing officer found
that Rivera had a mild limitation, based on his ability to
maintain a relationship with his fiancee and interact with his
children, evidencing his capacity to interact appropriately and
communicate effectively.  Id.

In the functional area of concentration, persistence, or
pace, the hearing officer found that Rivera had a mild
limitation.  Id.  The hearing officer reviewed reports by
Rivera's treating clinician, which reported his focus as "okay,"
as well as reports by the state agency psychologists, which
stated that he could understand instructions and stay focused on
simple tasks.  Id.

Lastly, in the area of episodes of decompensation, the
hearing officer found that Rivera had not experienced any such
episodes in the workplace setting since his successful treatment
at Westwood Lodge following the incident on October 6, 2008.  Id.
at 13.

The hearing officer found that Rivera was not disabled at

step two of the five-step evaluation process because his mental impairment was not "severe."  Id. at 9.  At this stage of the evaluation, the claimant bears the burden of showing that he has a severe impairment or a combination of severe impairments.  See Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987); Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001).  A severe impairment is one that "significantly limits your physical or mental ability to do basic work activities . . . ."  20 C.F.R. § 404.1520(c). Additionally, an impairment must have lasted or be expected to last for a continuous period of at least twelve months in order to be severe.  Id. § 404.1509.

While it is true that the severity requirement is a de minimis standard "designed to do no more than screen out groundless claims," McDonald v. Secretary of Health & Human Servs., 795 F.2d 1118, 1123-24 (1st Cir. 1986), a claimant cannot satisfy the severity requirement "when medical evidence shows that the person has the ability to perform basic work activities, as required in most jobs."[4]  SSR 85-28, 1985 WL 56856, at *3 (1985).

The hearing officer correctly concluded that Rivera's

---

[4] Examples of basic work activities include "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; and dealing with changes in a routine work setting."  SSR 85-28, 1985 WL 56856, at *3 (1985).

depression did not constitute a severe impairment because he is
capable of performing basic work activities.  According to the
state agency assessment completed by John Burke, Ph.D. ("Dr.
Burke"), Rivera's impairment is severe but not expected to last
more than twelve months; the resulting limitations are mild.
Admin. R. 326-36.  Another state agency assessment completed by
Jane Metcalf, Ph.D. ("Dr. Metcalf") supported Dr. Burke's finding
that Rivera's impairment is not expected to last more than twelve
months.  Id. at 359.  Dr. Metcalf's assessment listed Rivera's
functional impairments as mild, with the exception of social
functioning, which she graded as moderate.  Id. at 369.  In her
Functional Capacity Assessment, Dr. Metcalf reported that within
twelve months, Rivera would be capable of understanding
instructions, maintaining focus/pace on simple tasks, working in
an independent role with "low social contact, supportive others,"
and adapting to a low stress work environment.  Id. at 375.

    In light of the Functional Capacity Assessment completed by
Dr. Metcalf, it seems entirely plausible that Rivera would be
capable of performing jobs similar to those he has held in the
past despite his impairment.  Past jobs include working as a
commercial cleaner, delivery driver, and mechanic.  Id. at 20-26.
Rivera's evaluation showed that he is able to understand simple
instructions, and that he previously held generally solitary
jobs.  Therefore, his social functioning capacity should not be

an issue.  Rivera's own treating clinician, Brown, reported in December 2008 that while Rivera's "symptoms prevent him from socializing due to irritability and low self-worth . . . [he] is able to concentrate on small tasks" and "appears to be able to focus appropriately." Id. at 323.  In another report from December 2008, Brown stated that Rivera was "talkative and engaged throughout [the] session" and "motivated to gain employment." Id. at 405.

## 1. Weight Afforded to Treating Clinician's Opinion

The hearing officer is to give the opinion of a treating source controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record . . . ." 20 C.F.R. § 404.1527(d)(2); see also Shaw v. Secretary of Health and Human Servs., No. 93-2173, 1994 WL 251000, at *3 (1st Cir. 1994).  If the hearing officer declines to give controlling weight to the treating source, he must always provide "good reasons" for his decision. See 20 C.F.R. § 404.1527(d)(2).

In making his decision regarding Rivera, the hearing officer gave "significant weight" to the observations and opinions of the state agency psychological consultants and afforded "little weight" to the opinions of Rivera's treating clinician, Brown. Admin. R. 13.  Rivera disputes this weighing technique, arguing

that the opinions upon which the hearing officer chose to rely were speculative and that the findings of Rivera's treating clinician should have been afforded greater weight. Rivera's Mem. 7.

Rivera was assessed by two non-examining state agency physicians when he applied for SSDI benefits. Dr. Burke completed a Psychiatric Review on December 31, 2008. Admin. R. 326. He opined that Rivera's depression constituted a severe impairment, but not one that was expected to last twelve months. Id. Dr. Burke rated Rivera's functional limitations as "mild" in the following areas: restriction of activities of daily living; difficulties in maintaining social functioning; and difficulties in maintaining concentration, persistence, or pace. Id. at 336. Dr. Metcalf concurred with Dr. Burke's opinion that Rivera's depression constituted a severe impairment, but not one that was expected to last twelve months. Id. at 359. Dr. Metcalf rated Rivera's functional limitations as "mild" in the areas of restriction of activities of daily living and difficulties in maintaining concentration, persistence, or pace. Id. at 369. Rivera's functional limitation in the area of maintaining social functioning was rated as "moderate." Id.

The opinions of the state agency psychologists that Rivera's depression would improve within twelve months (and thus not be severe) were not speculative, as Rivera claims, see Rivera's Mem.

7, but rather are supported by substantial evidence.  In his state agency assessment, Dr. Burke opined that Rivera's impairment would not be severe by October 2009 "with continued treatment compliance and abstinence from drugs/alcohol."  Id. at 352.[5]

   Medical reports show that Rivera responds well to treatment and medication.  When Rivera was diagnosed with major depressive disorder on June 9, 2003, he was prescribed Risperdal and Zoloft.  Id. at 206-07.  By September 2004, his depression was in remission.  Id. at 221.  After Rivera began feeling depressed again in October 2008, he was briefly hospitalized at Westwood Lodge.  Id. at 263.  When admitted on October 6, 2008, Rivera had a GAF score of 20, and upon discharge just two days later he was assigned a GAF score of 70.  Id. at 301.  Rivera himself reported that some of his prescriptions had decreased his feelings of depression.  A report completed by Brockton Neighborhood Health Center on October 14, 2008, stated that Rivera is "taking Risperdal and feels that is helping him."  Id. at 306.  Similarly, a report completed by Brown on January 8, 2009, stated that Rivera was taking Risperdal and a "pos[itive] effect [was] reported."  Id. at 411.

---

[5] Rivera tested positive for cocaine on October 21, 2008, Admin. R. 352, and reported drinking two beers per week in addition to using marijuana once a month in January 2009, id. at 418.

The hearing officer did not give the opinion of Rivera's treating clinician, Brown, controlling weight because her conclusions regarding Rivera's limitations were "unsupported by her own treatment records and appear[ed] to heavily rely upon the subjective complaints of the claimant . . . ." Id. at 13. The hearing officer was correct in concluding that the inconsistency between Brown's opinion regarding Rivera's limitations and her treatment notes warrants giving her opinion lesser weight than the state agency assessments. For example, on April 6, 2009, Brown filled out a Supplemental Questionnaire as to Residual Functional Capacity and concluded that Rivera could not sustain competitive employment on a full-time, ongoing basis, id. at 173, even though her treatment notes from just two months earlier on February 18, 2009, stated that "[Rivera] seemed relieved concerning recent employment and motivation to continue with employment," id. at 431. Also, in a Treatment Plan filled out on January 13, 2009, Brown reported that Rivera was "still struggling" with depression, but was no longer suicidal and that his "stressors outside of depression and finances have resolved and coping skills have increased." Id. at 419. Brown's treatment notes do not support her April 6, 2009, opinion that Rivera is not suited for full-time employment. Rather, her notes reveal that Rivera was improving, as he was developing coping skills and appeared motivated to seek employment. Id. at 419,

431.

A hearing officer may choose not to adopt examining source opinions if they are inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2). Here, the hearing officer gave less weight to the opinions of Rivera's treating clinician, Brown, because they were largely based on Rivera's subjective complaints and were inconsistent with other substantial evidence in the record, namely the state agency assessments completed by Dr. Burke and Dr. Metcalf, and Brown's own treatment notes. For these reasons, the hearing officer's decision to afford limited weight to Brown's opinions is supported by substantial evidence and his determination that Rivera does not suffer from a severe mental impairment is affirmed.

## B. Pain Evaluation and Credibility

The hearing officer found that Rivera's statements concerning the limiting effects of his depression were not credible because they were inconsistent with or unsupported by the evidence in the record, including objective medical evidence and testimony given by Rivera himself regarding his activities of daily living. Admin R. 10-11. The hearing officer's credibility determination was proper and is therefore affirmed.

The First Circuit has held that in "situations in which an individual's alleged on [sic] reported symptoms . . . suggest the

possibility of a greater restriction of the individual's ability
to function than can be demonstrated by objective medical
findings alone . . . . reasonable conclusions as to any
limitations on the individual's ability to do basic work
activities can be derived from the consideration of other
information in conjunction with medical findings." Avery, 797
F.2d at 28. Avery explains that, "[i]n developing evidence of
pain or other symptoms," a hearing officer must "investigate all
avenues presented that relate to subjective complaints, including
the claimant's prior work record and information and observations
by treating and examining physicians . . . ." Id. "In
evaluating a claimant's subjective complaints . . . the [hearing
officer] must give full consideration to all of the available
evidence, medical and other, that reflects on the impairment and
any attendant limitations of function." Id. at 29.

In evaluating Rivera's testimony and determining that he was
not credible, the hearing officer correctly based his conclusion
on the entire record. The hearing officer found that Rivera's
testimony regarding the intensity, persistence, and limiting
effects of his symptoms was not credible because of the
"inconsistency between [Rivera's] broad range of activities and
his allegations regarding the functional limitations of his
depression . . . ." Admin. R. 11. For example, Rivera testified
that his antidepressant medications did not help his symptoms,

19

even though the record shows instances of him reporting that the medications were helping. See, e.g., id. at 306 (noting Rivera's belief that Risperdal "is helping him"). The record also shows that Rivera was not consistent in taking his medications and at times stopped taking them on his own. See, e.g., id. at 352 ("[Rivera] took himself off Celexa but maintained Risperdal."). Dr. Burke opined that if Rivera were to comply with his treatment plan, including the consistent use of antidepressant medications and abstinence from illicit drugs and alcohol, his symptoms of depression would not continue to be severe for a continuous period of twelve months. Id.

Rivera further testified that stress resulting from his depression occasionally prevented him from working, yet the record shows that he worked odd jobs at least during the months of May and June 2009. Id. at 494, 500. A report completed by Brown on May 21, 2009, states that "[Rivera] reported that he has been working odd jobs for extra money . . . ." Id. at 494. A report completed on June 3, 2009, states that "[Rivera] cancelled [his] appointment due to work . . . ." Id. at 498. One of these odd jobs included helping out at an auto-body shop, id. at 430, presumably performing work activities similar to those he performed while previously employed as a mechanic from September 2007 to January 2008, id. at 140. Although the record does not explain the nature or duration of the odd jobs performed by

Rivera in detail, the fact that he was able to seek out, obtain,
and maintain employment, even at the minimum level of odd jobs,
is indicative of his ability to perform basic work activities
such as sitting, remembering simple instructions, and adapting to
changes in a work setting.

Even aside from Rivera's work history, there is sufficient
evidence to support the hearing officer's finding that Rivera is
capable of performing more substantial activities than his
testimony suggests.  In a Function Report completed by Rivera on
February 11, 2009, he listed his daily activities including
eating, watching television, playing with his kids, going out for
occasional walks, performing household chores and yard work, and
using a computer.  Id. at 132-39.  Rivera's functional
capabilities are further evidenced by his plan to take English as
a Second Language ("ESL") classes during the summer of 2009, id.
at 502, and his ability to maintain relationships with his
fiancee and children, id. at 11.

For these reasons, the hearing officer was correct in
concluding that Rivera "has substantially greater functional
capabilities" than he claims.  Id.  Rivera was given favorable
evaluations of his functioning capacity by both state agency
assessments and his own treating clinician on certain occasions.
Moreover, Rivera's claim that his depression symptoms preclude
him from working is contradicted by the odd jobs he performed

21

during the months of May and June 2009. <u>Id.</u> at 494, 500. The hearing officer's credibility determination is affirmed.

## V. CONCLUSION

For the reasons stated above, this Court DENIES Rivera's Motion to Reverse the Decision of the Commissioner, ECF No. 12, and ALLOWS the Commissioner's Motion for Order Affirming the Decision of the Commissioner, ECF No. 15. Judgment shall enter for the Commissioner.

SO ORDERED.

<u>/s/ William G. Young</u>
WILLIAM G. YOUNG
DISTRICT JUDGE